**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
-----------------------------------x
ANN BECKWITH, ADMINISTRATOR FOR      :
THE ESTATE OF ROBERT BECKWITH AND    :
ANN BECKWITH PERSONALLY;             :
ALBERT COON; ALLEN BARKER;           :
JOSEPH VENDITTO; ROY J. SMITH;       :
LOUIS PERRAS; ROBERT WATZ;           :
SAMUEL F. FYFE; GEORGE GAVITT;       :
JAMES PONT; RAYMOND DUNKELBARGER;    :
MANUEL ARRUDA; BRYAN MERFELD;        :    CASE NO. 3:09CV0216 (AWT)
JOHN E. SMITH; ELAINE MITCHELL;      :
JOYCE JERVIS; and CONNIE HOLCOMB,    :
                                     :
          Plaintiffs,                :
v.                                   :
                                     :
GENERAL ELECTRIC COMPANY, and        :
BUFFALO PUMPS, INC.,                 :
                                     :
          Defendants.                :
-----------------------------------x
```

**RULING ON MOTION TO REMAND**

The above-named plaintiffs brought this action in Connecticut Superior Court, setting forth negligence and product liability claims based on the defendants' use of asbestos.  Buffalo Pumps, Inc. ("Buffalo Pumps") removed this case pursuant to 28 U.S.C. § 1442(a), and General Electric ("GE") joined in the removal.  The plaintiffs have moved to remand.  For the reasons set forth below, the motion is being denied.

**I. BACKGROUND**

The plaintiffs filed their complaint in Connecticut Superior Court, Judicial District of Fairfield at Bridgeport.  Every

-1-

plaintiff worked at General Dynamics Corp./Electric Boat Division

in Groton, Connecticut, and some of the plaintiffs, including the

lead plaintiff, who is now deceased, served in the U.S. Navy.  All

allege injuries from asbestos-related diseases resulting from

exposure while the plaintiffs worked with products provided by the

defendants in constructing and maintaining ships for the U.S.

Navy.  Specifically, defendant Buffalo Pumps manufactured

centrifugal pumps, while defendant GE manufactured marine steam

turbines, both of which the companies supplied to the Navy.  The

defendants do not challenge here the plaintiffs' contention that

they were exposed to asbestos, but contend that the Navy dictated

the specifications for all equipment that it procured and dictated

what warnings were to appear on the equipment.  Thus, the

defendants argue that they have a basis to assert a military

contractor defense and that fact entitles them to litigate this

case in federal court.

**II. DISCUSSION**

The federal officer removal statute permits removal from

state court of cases against "any officer (or any person acting

under that officer) of the United States or any agency thereof,

sued in an official or individual capacity for any act under color

of such office. . . ."  28 U.S.C. § 1442(a)(1).  A defendant who

is not a federal officer or agency must show (1) that it is a

person within the meaning of the statute, (2) that it was "acting

under" a federal officer and that there was a "causal connection"
between the charged conduct and the asserted official authority,
and (3) that it has a "colorable" federal defense.  See California
v. Atlantic Richfield Co. (In re Methyl Tertiary Butyl Ether
Prods. Liab. Litig.("MTBE")), 488 F.3d 112, 124 (2d Cir. 2007).
The statute should be construed broadly and "should not be
frustrated by a narrow, grudging interpretation. . . ."  Arizona
v. Manypenny, 451 U.S. 232, 242 (1981) (citation omitted).
Furthermore, a defendant is not required "virtually to win his
case before he can have it removed."  Jefferson County, Ala. v.
Acker, 527 U.S. 423, 431 (1999) (citation and internal quotation
omitted).  As to the first element, it is undisputed that the
defendants are "persons" under the statute.  See, e.g., Winters v.
Diamond Shamrock Chem. Co., 149 F.3d 387, 398 (5th Cir. 1998)
(corporate entities qualify as "persons" under § 1442(a)(1)).

### A. Acting Under and Causal Connection

To establish the second element, a defendant must show that
"'the acts that form the basis for the state civil or criminal
suit were performed pursuant to an officer's direct orders or to
comprehensive and detailed regulations.'"  MBTE, 488 F.3d at 124
(quoting Ryan v. Dow Chem. Co., 781 F.Supp. 934, 947 (E.D.N.Y.
1992)).  In examining whether defendants satisfy this requirement,
courts should look to the extent to which defendants "acted under
federal direction at the time they were engaged in the conduct now

-3-

being sued upon." Id. at 125 (citation omitted). Acts that are performed under the "general auspices" of a federal officer, or the mere participation of a corporation in a regulated industry, are insufficient to support removal based on federal officer jurisdiction. Id. (citation omitted). "The words 'acting under' are to be interpreted broadly, and the statute as a whole must be liberally construed." Isaacson v. Dow Chem. Co., 517 F.3d 129, 136 (2d Cir. 2008) (citations omitted). "In the context of a failure to warn claim, the defendant must establish that the government's control over warnings directly interfered with the defendant's ability to fulfill its state law obligation to warn of safety hazards." Nesbiet v. Gen. Elec. Co., 399 F. Supp. 2d 205, 211 (S.D.N.Y. 2005).

The plaintiffs argue that, for two reasons, the defendants have not established that they were acting under federal direction at the time of the actionable conduct. First, the plaintiffs argue that the defendants' affidavits do not address the fact that the plaintiffs are alleging injuries sustained as a result of their employment as civilian employees at a private shipyard run by General Dynamics, not injuries suffered as the result of their employment in a naval shipyard or during service in the U.S. Navy, and that the defendants' affidavits provide "only tangential evidence or anecdotal reference to [their] contractual relationship[s] with Electric Boat and are entirely unclear as to

-4-

the communications, association and fulfillment of [their]

contracts with Electric Boat." (Response to Defendant Buffalo Pump

Inc.'s Opposition to Plaintiffs' Motion to Remand (Doc. No. 18)

("Pls.' Resp.") 2.)[1]

After reviewing the affidavits submitted by Buffalo Pumps and

GE, the court concludes that the defendants have met their burden

as to this element.  In response to the plaintiffs' argument that

they were not serving as employees of the Navy and thus "may not

have been acting under a federal officer at all but under control

and contract with Electric Boat,"  (Motion to Remand (Doc. No. 12)

20.), the defendants have provided evidence that they were acting

under the Navy's control and direction and pursuant to

comprehensive and detailed orders.  David P. Sargent, a retired

Rear Admiral, avers:

> Throughout the twentieth century, the U.S. Navy has
> constructed warships in both government owned and operated
> Naval Shipyards and in commercially owned and operated
> civilian shipyards.  This is true for various types of
> warships including aircraft carriers, destroyers,
> cruisers, submarines, amphibious and auxiliary
> ships. . . . In both Naval shipyards and commercial
> shipyards the Navy exercised strict control over the
> construction of the ships, installation of all equipment,
> and testing of the ship and systems prior to acceptance
> and commissioning of the ship. Control in Naval shipyards
> was accomplished through the shipyard commander who was
> a uniformed Naval Officer, typically either [a] Navy
> admiral or senior Navy captain. In civilian shipyards,

---

[1]The plaintiffs' Response to Defendant General Electric
Company's Opposition to Plaintiffs' Motion to Remand (Doc. No. 19)
contains the same argument.

similar oversight and control was accomplished through a resident Supervisor of Shipbuilding, Construction, and Repair (SUPSHIPS), also typically a Navy admiral or senior captain, with a staff of Navy uniformed and civil service personnel. The SU[P]SHIP staff was comprised of personnel with expertise in technical, contractual, logistics, operational and other relevant skills.  The resident SUPSHIPS reported to the [Chief], Bureau of Ships (BUSHIPS, now NAVSEA) and was the on[site] manager of the Navy contract with responsibility for day to day management and inspection of all work involved in the construction of warships at that facility, and for responding to all technical and contractual questions and requirements raised by the shipbuilding contractor.  The Supervisor of Shipbuilding had authority to require changes, rework, or even stop-work orders in the event that the Navy contract requirements were not being fully met. . . .

Major propulsion, auxiliary and weapons equipment for installation in warships was procured from industry by the Navy and delivered to the submarine constructing shipyard, General Dynamics/Electric Boat Division as Government Furnished Equipment (GFE), either through direct BUSHIPS contracts or directed contracts utilizing the construction yard as the Navy procurement agent.  A few examples of GFE equipment include components such as   . . . turbines . . . [and] pumps . . . .  GFE equipment such as these was contracted for directly by the Navy who had Navy Resident Inspectors at manufacturing plants to monitor, inspect, and accept or reject the equipment prior to shipment.

(Sargent Aff. (Doc. No. 14, Ex. 3) ¶¶ 36-37.)  Thus, contrary to the plaintiffs' assertions, the defendants' affidavits address what happened in commercially owned and operated civilian shipyards in general and at General Dynamics Corp./Electric Boat Division in particular.

Second, the plaintiffs argue that the affidavits submitted by the defendants do not show that the Navy forbade the defendants from fulfilling their state law duty to warn or that the Navy

dictated the contents of the warnings.  However, there is no
requirement that the Navy go so far in order to provide removal
jurisdiction.[2]   It can be sufficient that "the acts that form the
basis for the state civil or criminal suit were performed pursuant
to . . . comprehensive and detailed regulations."  MBTE, 488 F.3d
at 124.  Although the Second Circuit has noted that the "line
between the absence and presence of 'direct control' by a federal
officer is a fine one, depending heavily on the facts of each
case," id. at 125, the court cited with approval a court's finding
that removal was appropriate in a situation combining detailed
specifications by the government, the defendant's compulsion to
provide the product to those specifications, and the government's
oversight over the manufacturing process.  See id. at 126.  Those
elements are present here.

The defendants have also produced evidence as to the causal
connection between the charged conduct and the official authority
by showing that the Navy dictated the contents of warnings
associated with its ships.  David Hobson, the former manager of
Navy Customer Service for GE's Navy and Small Turbine Department
avers that "[t]he U.S Navy had precise specifications as to the
nature of any communication affixed to machinery supplied by GE to

_____

    [2]Cf. infra note 3 (discussing a similar argument with respect
to the test for a colorable federal defense established by Boyle
v. United Techs. Corp., 487 U.S. 500 (1998)).

-7-

the Navy.  GE would not have been permitted, under the specifications, associated regulations and procedures, nor under the actual practice as it evolved in the field, to affix any type of warning or caution statement to a piece of equipment intended for installation onto a naval vessel, beyond those required by the Navy."  (Hobson Aff. (Doc. No. 15, Ex. 3) ¶ 23.)  Also, retired Rear Admiral of the U.S. Navy, Ben J. Lehman avers that "the Navy dictated every aspect of the design, manufacture, installation, overhaul, written documentation, and warnings associated with its ships and did not permit deviation by any of its contractors." (Lehman Aff. (Doc. No. 15, Ex. 8) ¶ 6.)  Lehman states that "[a]ny deviation from military specifications of equipment to be installed on ships resulted in significant problems and rejection of the equipment."  (Id. ¶ 3.)  Buffalo Pumps has submitted the affidavit of retired Rear Admiral Roger Horne, who avers that "[a]ny attempt by a manufacturer to affix a cautionary statement concerning asbestos to pumps would have been futile, and would have been contrary to Navy protocols for instruction and training relating to use of asbestos materials."  (Horne Aff. (Doc. No. 14) ¶ 22.)

Thus, the evidence produced by the defendants establishes that the Navy had complete control over the manufacture and design of every piece of equipment on its ships, as well as the nature of warnings issued, and contractors, such as Buffalo Pumps and GE,

would not have been permitted by the Navy to place warning labels

or cautionary language on products containing asbestos aboard Navy

ships.  Therefore, the defendants were "acting under" a federal

agency when they supplied products to the Navy, and the requisite

causal nexus exists between the defendants' conduct under the

direction of a federal officer and the plaintiffs' claim that the

defendants failed to warn them of the hazards associated with

asbestos.

**B. Colorable Defense**

The defendants must show that they have a colorable defense.

To establish this element, a defendant must show that (1) "the

United States approved reasonably precise specifications" for the

military equipment supplied by the contractor; (2) "the equipment

conformed to those specifications; and (3) the [military

contractor] warned the United States about the dangers in the use

of the equipment that were known to the [contractor] but not to

the United States."  Boyle v. United Techs. Corp., 487 U.S. 500,

512 (1988).  To establish that any state law duty to warn has been

displaced under Boyle, a defendant "must show that the applicable

federal contract includes warning requirements that significantly

conflict with those that might be imposed by state law." Grispo v.

Eagle Picher Indus., Inc. (In re Joint E. & S. Dist. N. Y.

Asbestos Litig.), 897 F.2d 626, 630 (2d Cir. 1990).  However,

"[t]he conflict with federal policy need not be as sharp as that

which must exist for ordinary pre-emption when Congress legislates

in a field which the States have traditionally occupied.  Or to

put the point differently, the fact that the area in question is

one of unique federal concern changes what would otherwise be a

conflict that cannot produce pre-emption into one that can."

Boyle, 487 U.S. at 507-08.  In addition, a contractor "must show

that whatever warnings accompanied a product resulted from a

determination of a government official, and thus that the

Government itself 'dictated' the content of the warnings meant to

accompany the product."  Id. (internal citations omitted).  "For

the military contractor defense to apply, government officials

ultimately must remain the agents of decision."  Id.

### 1. Reasonably Precise Specifications

The Second Circuit has stated that "answering the question

whether the [g]overnment approved reasonably precise

specifications for the design feature in question necessarily

answers the question whether the federal contract conflicts with

state law.  If such specifications are present, the contractor's

federal contractual duties will inevitably conflict with alleged

state tort duties to the contrary because complying with the

federal contract will prevent compliance with state tort law as

the plaintiffs have alleged that it exists."  Twinam v. Dow Chem.

Co. (In re "Agent Orange" Prod. Liab. Litig.), 517 F.3d 76, 93 (2d

Cir. 2008) (internal quotations and citation omitted).

-10-

>     Defendants asserting the defense must demonstrate that the
>     government made a discretionary determination about the
>     material it obtained that relates to the defective design
>     feature at issue.  Where the government merely rubber
>     stamps a design, or where the government merely orders a
>     product from stock without a significant interest in the
>     alleged design defect, the government has not made a
>     discretionary decision in need of protection, and the
>     defense is therefore inapplicable.

Id. at 90 (internal quotation, citation, and alterations omitted).

Buffalo Pumps has submitted Admiral Horne's affidavit, in which he avers that the Navy had detailed specifications over many things, including the "form and content of written materials to be delivered with equipment, including pumps, supplied to the Navy." (Horne Aff. ¶ 13.)  Admiral Horne also avers that the "Navy believed that excessive warnings for common shipboard hazards led to apathy and resulting disregard of hazard by Navy personnel." (Horne Aff. ¶ 22.)  Therefore, "the Navy would not have permitted . . . a vendor such as Buffalo Pumps to attach any type of warning or cautionary statement not required and approved by the Navy, including any statement related to asbestos."  (Id.)  An attempt by a manufacturer to affix a warning label "would have been futile, and would have been contrary to Navy protocols for instruction and training relating to the use of asbestos materials."  (Id.)  Admiral Lehman states that "the Navy had specifications as to the nature and content of all written material that was delivered with each piece of equipment, including turbines and turbine manuals . . . the Navy dictated

every aspect of the design, manufacture, installation, overhaul, written documentation, and warnings associated with its ships and did not permit deviation by any of its contractors." (Lehman Aff. ¶ 6.)  Admiral Sargent avers that "the Navy would not have permitted Buffalo Pumps or other equipment suppliers to place asbestos-related warnings on packaging or containers for pumps or related parts or items supplied during the 1940s, 1950s, and 1960s." (Sargent Aff. ¶ 55.)  Finally, Lawrence Stillwell Betts, a retired Navy Captain and president of a medical corporation, concludes, after an extensive review of the relevant literature, that "[i]t would be unreasonable to assume that the Navy would have accepted gratuitous comments from equipment manufacturers about hazards associated with a product it neither made nor sold and about which the Navy was already aware."  (Betts Aff. (Doc. No. 15, Ex. 7) ¶ 33.)

    The plaintiffs have submitted the affidavit of retired U.S. Navy Captain Robert Woodruff, who avers that "there is insufficient printed documentation to fully substantiate the opinion that supports the concept that the U.S. Navy would not have included warning labels if they had been suggested by the vendors."  (See Woodruff Aff. (Doc. No. 17) ¶ 3.)  Woodruff avers that he has identified warning labels and safety precautions about hazardous materials and dangerous procedures and that his review of the materials in these other circumstances shows that these

-12-

warnings were "clearly marked and highlighted whenever the vendor felt it necessary.  Given the presence of these warning labels, one can infer that the Navy did not challenge these warnings and caution labels that no doubt came straight from the vendor."  (Id. at 11, ¶ 5.)

Notwithstanding the inferences urged by Woodruff, the affidavits and other evidence submitted by the defendants support the conclusion that the Navy would not have permitted a manufacturer to place its own warning on equipment without approval from the Navy.  Taken together, the defendants' evidence is more persuasive in material respects than the countervailing evidence submitted by the plaintiffs.  In addition, at this stage the federal defense need only be colorable--it does not have to be sufficient to prevail at trial.  See Isaacson v. Dow Chem. Co., 517 F.3d 129, 139 (2d Cir. 2008) (quoting Willingham v. Morgan, 395 U.S. 402, 407 (1969)) ("To be 'colorable,' the defense need not be 'clearly sustainable,' as the purpose of the statute is to secure that the validity of the defense will be tried in federal court.").  Nor are the defendants required to disclose the exact government specifications or contracts stating specifically that the defendants were not to affix their particular asbestos warnings or communications concerning an actual time when the asbestos warnings were actually rejected by the government.  See Ballenger v. Agco Corp., No. C 06-2271 CW, 2007 U.S. Dist. LEXIS

-13-

47042, at *11 (N.D. Cal. June 22, 2007)("Just as [the defendant]

is not required to produce contracts from decades past, it is not

required to produce such detailed declarations concerning whether

the Navy directed the exact manner of installation and

affirmatively prohibited any kind of warning in order to

demonstrate that it worked under the direction of federal

officers; such requirement would frustrate the purpose of section

1442(a)(1).").

### 2. Equipment conforms to specifications

The defendants have made the requisite threshold showing that

the products supplied to the Navy conformed to its detailed

specifications.  It appears to be undisputed that the Navy

accepted the manufactured products of GE and Buffalo Pumps.

### 3. Contractor warning U.S. about known dangers

Boyle also requires that the a contractor must "warn[] the

United States about the dangers in the use of the equipment known

to the supplier but not to the United States."  Boyle, 487 U.S. at

512.  The Second Circuit has observed that "[i]t would be

impractical to require that a manufacturer compile and present to

the government in advance a list of each and every risk associated

with a product it is producing for the government."  In re "Agent

Orange", 517 F.3d at 98.  If the "government did not need the

warnings because it already possessed that information", id. at

-14-

99, then the third Boyle requirement is satisfied.[3]  In Contois v.

Able Indus., Inc., 523 F.Supp.2d 155, 160-61 (D. Conn. 2007) this

court reviewed the affidavits of Captain Betts and Doctor Samuel

Forman and concluded that that evidence "establishe[d] the

superior knowledge of potential hazards on the part of the Navy

vis-a-vis equipment manufacturers . . . ." Id. At 161.

Substantially the same evidence has been submitted in this case.

Compare id. at 160-61 with (Betts Aff. ¶ 33 & Forman Aff. (Doc.

No. 14, Ex. 4) ¶ 14).  Consequently, the court reaches the same

conclusion here.[4]  In addition, in his affidavit, Captain Woodruff

---

[3]The plaintiffs argue that the defendants' affidavits failure
to disclose "any government specifications or contracts that
prevented asbestos warnings that were actually rejected by the
government," should defeat the defendant's basis for removal
because of language in the Second Circuit's decision in Grispo v.
Eagle-Picher Industries, Inc. (In re Joint Eastern and Southern
District New York Asbestos Litigation), 897 F.2d 626 (2d Cir.
1990). (Pls.' Resp. 9.)  Faced with similar arguments, the Seventh
Circuit noted that it "c[ould ]not accept as consistent with Boyle
the suggestion that there is any strict requirement that the
government 'prohibit' warnings altogether or 'dictate' the
contents of the warnings actually incorporated." Oliver v.
Oshkosh Truck Corp., 96 F.3d 992, 1004 n.8 (7th Cir. 1996).  The
court also expressed doubt as to whether the Second Circuit's
position was as stringent as had been suggested. See id.  The
Second Circuit's discussion in In re "Agent Orange", quoted above,
demonstrates that the Seventh Circuit's assessment was correct.
See also In re "Agent Orange", 517 F.3d at 98 ("It would be
impractical to require that a manufacturer compile and present the
government in advance a list of each and every risk associated
with a product it is producing for the government.  The operation
of a tank or a transport plane . . . involves . . . virtually
limitless risks.").

[4]The plaintiffs also point to what is termed as SECNAV
Instruction 5100.8 ("Uniform Labeling Program – Navy," dated

concedes that "[t]he U.S. Navy did play the primary role in

gathering information and examining the hazards of asbestos,

gauged primarily by the documents reviewed during this period."

(Woodruff Aff. ¶ 4.)

**III.   CONCLUSION**

    For the reasons set forth above, the plaintiffs' Motion to

Remand (Doc. No. 12) is hereby DENIED.

    It is so ordered.

    Signed this 30th day of March, 2010 at Hartford, Connecticut.


                                    _____/s/AWT_____
                                       Alvin W. Thompson
                                    United States District Judge

_____

September 24, 1956 ("ULP")) to argue that the defendants needed to
place warnings and labels consistent with state law.  In Contois,
the court dismissed substantially the same argument:
       This document states that the instructions regarding
       labeling requirements for hazardous chemical products
       during the usage stage are "not intended to govern" the
       "type of labels to be affixed by the manufacturer."
       However, the Uniform Labeling Program-Navy would not have
       applied to product manufacturers, such as Buffalo Pumps
       and GE, that contracted with the Navy because, by its
       terms, it "governed the labeling of hazardous chemicals
       by Navy personnel, not outside product manufacturers."
Contois, 532 F.Supp.2d at 162 (citation omitted).  The court
adopts that reasoning here.